UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                                         :

ROBERT TYRONE HARMON,                  :

                                Plaintiff,      :

                                                :         13 Civ. 1711 (PAE)

                  -v-                     :

                                                :

NEW YORK COUNTY DISTRICT ATTORNEY'S    :       OPINION & ORDER
OFFICE, CYRUS R. VANCE, JR., *individually and in his*  :
*official capacity as District Attorney of New York County*,  :
ROBERT M. MORGENTHAU, *individually and in his*    :
*official capacity as former District Attorney of New York*  :
*County*, STEPHANIE KAPLAN, DONNA KLETT, and    :
THE CITY OF NEW YORK,                      :

                                              :

                                  Defendants.    :

                                                :
---------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

     *Pro se* plaintiff Robert Tyrone Harmon ("Harmon") brings this action, under 42 U.S.C.

§§ 1983, 1985(3), and 1986, alleging that the named defendants violated his constitutional rights.

The gravamen of Harmon's Complaint is that the defendants, in 2001, caused a New York State

Supreme Court Justice to erroneously sentence him as a predicate felony offender under N.Y.

Criminal Procedure Law § 400.21 and N.Y. Penal Law § 70.06, based on his prior federal

conviction for conspiracy to distribute narcotics under 21 U.S.C. § 846.  As Harmon emphasizes,

years later, in 2012, after he served his sentence, it was retrospectively reduced from the original

three-to-six years to one year, based on a new decision from the New York Court of Appeals

holding, for the first time, that a federal conspiracy convictions under § 846 do not constitute a

predicate felony under New York law.

     Following his resentencing, Harmon filed this lawsuit against three sets of defendants:

(1) the New York County District Attorney's Office ("NYDA"), Cyrus R. Vance, Jr. ("Vance"),

and Robert M. Morgenthau ("Morgenthau") (collectively, the "DA defendants"); (2) Harmon's former defense counsel, Legal Aid attorneys Stephanie Kaplan ("Kaplan") and Donna Klett ("Klett") (collectively, the "Legal Aid defendants"); and (3) the City of New York ("the City"). Harmon claims that the classification in 2001 of his federal conviction as a predicate felony was erroneous, caused him injury (in the form of a longer sentence), and is today actionable. Harmon asserts that the defendants committed, and conspired to commit, malicious prosecution, and violated his Fourth Amendment rights, by wrongly charging him as a predicate felony offender. Harmon also claims ineffective assistance of counsel on the part of the Legal Aid defendants.

The defendants now move to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, defendants' motions are granted.

## I.      Background[1]

### A.      Harmon's Conviction and Sentencing

On December 11, 2000, in New York State Supreme Court in Manhattan, Harmon pled guilty before Justice Daniel FitzGerald to the attempted sale of a controlled substance in the third degree, N.Y. Penal Law § 220.39(1). SAC ¶ 2. That same day, Harmon was arraigned on a statement of predicate felony conviction, which alleged that Harmon had been convicted, on January 3, 1999, of conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 846, in the U.S. District Court for the Southern District of West Virginia.[2] *Id.* ¶¶ 1–2. At the arraignment,

---

[1] The facts below are drawn from the Second Amended Complaint, Dkt. 35 ("SAC"). On a motion to dismiss, the Court accepts all factual allegations in the SAC as true, drawing all reasonable inferences in the plaintiff's favor. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

[2] The statement of predicate felony conviction, pursuant to N.Y. Criminal Procedure Law § 400.21 and N.Y. Penal Law § 70.60, was originally filed on September 5, 2000 by ADA Jennifer Gaffney ("Gaffney") in the New York Supreme Court, County of New York. SAC ¶ 1; *id.* Ex. A. Harmon does not dispute the fact of his prior conviction. *See id.* ¶¶ 1, 2.

the court advised Harmon's defense counsel that any challenge to the statement of predicate felony conviction should be raised before sentencing. *Id.* ¶ 2.

On January 9, 2001, Klett, one of Harmon's attorneys, spoke with Assistant District Attorney ("ADA") Michael Dougherty ("Dougherty") "off the record" and outside Harmon's presence. *Id.* ¶ 3.  Klett acknowledged to Dougherty that the defense would "probably lose" the predicate felony issue. *Id.*

Some time before the January 31, 2001 sentencing, Harmon spoke with defense attorney Kaplan about the predicate felony conviction. *Id.* ¶ 4.  Harmon noted that he had never been convicted of a felony in the State of New York, and asked why a federal conviction should affect a state court sentence. *Id.*  Kaplan informed Harmon, "It's a felony. . . . To challenge the predicate felony statement would be to no avail." *Id.*  At no time during the sentencing process did Klett or Kaplan challenge the statement of a predicate felony conviction. *Id.* ¶ 5.

On January 31, 2001, Harmon was sentenced as a predicate felony offender and received a prison sentence of three-to-six years. *Id.* ¶ 5; *id.* Ex. F at 7.  Slightly more than two years later, on May 28, 2003, Harmon was released on parole. *Id.* ¶ 5; *id.* Ex. F at 7.  On November 4, 2005, Harmon's parole was revoked, and he was again incarcerated until January 27, 2006. *Id.* ¶ 5; *id.* Ex. F at 7–8.  After another short release on parole, Harmon was incarcerated again from August 22, 2006 until October 26, 2006. *Id.* ¶ 5; *id.* Ex. F at 8.  On October 5, 2007, Harmon was discharged from parole. *Id.* ¶ 5; *id.* Ex. F at 8.

### B.   Harmon's Motion for Resentencing

In early 2012, Harmon's independent research led him to believe that New York State's "strict equivalency" standard for determining whether a prior conviction from another jurisdiction qualified as a predicate felony meant that his treatment in 2001 as a predicate felony

offender had been in error.  *Id.* ¶ 6.  On January 26, 2012 Harmon moved to set aside and correct his sentence.  *Id.*; *id.* Ex. G.  On May 8, 2012 ADA Gaffney filed a response, arguing that the motion should be summarily denied on the grounds that Harmon provided "no facts or arguments explaining why his sentence should be set aside."  *Id.* ¶ 7; *id.* Ex. B.

On May 24, 2012 Harmon filed a reply.  *Id.* ¶ 8; *id.* Ex. H.  He argued that his federal conviction under 21 U.S.C. § 846 was not equivalent to any felony under New York State law, and alleged that no prosecutor or defense attorney on his state case had adequately investigated that issue.  *Id.* Ex. H.  Unlike the federal drug conspiracy statute, the New York felony conspiracy statute requires the commission of an overt act.  *Compare United States v. Ogando*, 547 F.3d 102, 107 (2d Cir. 2008) ("to establish a conspiracy [under 21 U.S.C. § 846], the Government is not required to prove the commission of any overt acts in furtherance of the conspiracy"), *with* N.Y. Penal Law § 105.20 ("A person shall not be convicted of conspiracy unless an overt act is alleged and proved to have been committed by one of the conspirators in furtherance of the conspiracy.").  Harmon asserted that this difference meant that a federal drug conspiracy conviction could not qualify as a predicate felony under New York's strict equivalency standard.  SAC ¶ 8; *id.* Ex. H.

On June 25, 2012, the NYDA's office consented to Harmon's resentencing as a first-time felony offender.  *Id.* ¶ 9; *id.* Ex. I.  The NYDA explained that this outcome followed from *People v. Ramos*, 19 N.Y.3d 417 (2012), a New York Court of Appeals decision handed down two weeks earlier, on June 12, 2012.  *Ramos* held, for the first time, that "under New York's 'strict equivalency' standard for convictions rendered in other jurisdictions, a federal conviction for conspiracy to commit a drug crime [*i.e.*, for violating 21 U.S.C. § 846,] may not serve as a predicate felony for sentencing purposes."  *Id.* at 418.  Because the New York statute requires

proof of an element that 21 U.S.C. § 846 does not—namely, an overt act in furtherance of the conspiracy—the Court of Appeals held that "defendant's federal conspiracy conviction cannot serve as a predicate." *Id.* at 420.  Based on *Ramos*, the NYDA recommended that Harmon be retrospectively resentenced to one to three years in prison.  SAC Ex. I.

On August 27, 2012, Justice FitzGerald resentenced Harmon to one year in prison. *Id.* ¶ 10; *id.* Ex. J.  He noted that the minutes from the original sentencing indicated that, if Harmon was "not a predicate [felon,] he should get one year."  *Id.* Ex. J.

### C.     Procedural History

On March 13, 2013, Harmon filed his original Complaint in this case, claiming violations of federal and state law relating to his treatment as a predicate offender and seeking money damages.  Dkt. 2.  Harmon's federal claims for violation of his civil rights are brought under 42 U.S.C. § 1983 (civil action for deprivation of rights), § 1985(3) (civil action for conspiracy to interfere with civil rights), and § 1986 (civil action for neglect to prevent conspiracy to interfere with civil rights).  On April 16, 2013, Harmon filed an Amended Complaint.  Dkt. 5.  On May 13, 2013, the Court dismissed Harmon's claims against ADAs Gaffney and Dougherty on immunity grounds.  Dkt. 12.

On July 15, 2013, the DA defendants filed a motion to dismiss, Dkt. 21, and a supporting memorandum of law, Dkt. 17.  On July 18, 2013, the Legal Aid defendants filed a motion to dismiss, Dkt. 24, and a supporting memorandum of law, Dkt. 26.  And on August 2, 2013, the City filed a motion to dismiss, Dkt. 29, and a supporting memorandum of law, Dkt. 31.

On August 16, 2013, Harmon filed the SAC and a supporting memorandum of law opposing dismissal.  Dkt. 35 ("Pl. Br.").  The DA defendants, Legal Aid defendants, and the City

then filed letters stating that they would rely on their previously filed motions to dismiss.  *See* Dkt. 37, 38, 40.

On October 25, 2013, Harmon filed an opposition to the motions to dismiss.  Dkt. 46. The DA defendants, Legal Aid defendants, and the City all subsequently filed reply letters, stating that they would rely on their previous submissions.  *See* Dkt. 47, 49, 51.

## II.    Applicable Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a Complaint must allege facts that, accepted as true, "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint is not required to provide "detailed factual allegations," but it must assert "more than labels and conclusions" and more than "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S at 555.  The facts pled "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Id.* (internal citations omitted).  The Court must accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the nonmoving party.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999)  Further, *pro se* pleadings must be read liberally and should be

interpreted "to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

## III.   Discussion

The SAC, read liberally, raises multiple federal and state law claims.  Harmon's federal claims against the DA defendants and the City include:  (1) malicious prosecution against the individual defendants in violation of Harmon's Fourth Amendment right to be free from unreasonable seizure; and (2) malicious prosecution against the City for its failure to properly (a) hire, train, and supervise ADAs; (b) adopt policies, procedures, or standards; and (c) investigate prior claims of similar unlawful acts committed by ADAs.  Harmon's federal claims against the Legal Aid defendants include allegations that (1) Kaplan provided ineffective assistance of counsel in violation of Harmon's Sixth Amendment rights; (2) Klett conspired with the ADA to interfere with Harmon's Fourth Amendment right to be free from unreasonable seizure; and (3) both Kaplan and Klett negligently failed to prevent a violation of Harmon's Fourth Amendment right to be free from unreasonable seizure.

For the following reasons, the SAC's federal claims are dismissed for failure to state a claim upon which relief may be granted, and the Court declines to exercise supplemental jurisdiction over any state law claims.

### A.   The SAC's Malicious Prosecution Claims Against the DA Defendants and the City Fail to State a Claim Upon Which Relief May Be Granted

"Section 1983 'was intended to create a species of tort liability in favor of persons who are deprived of rights, privileges, or immunities secured to them by the Constitution.'" *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) (quoting *Carey v. Piphus*, 435 U.S. 247, 253 (1978)).  Section 1983 claims based on deprivations of liberty following criminal prosecutions implicate the Fourth Amendment right to be free from unreasonable seizure.  *See*

*Albright v. Oliver*, 510 U.S. 266, 271–74 (1994); *Singer*, 63 F.3d at 115 ("[T]he Fourth Amendment is the proper source of constitutional protection for claims, such as malicious prosecution, that implicate a person's liberty interest in respect of criminal prosecutions.").

To state a malicious prosecution claim under § 1983, Harmon "must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160–61 (2d Cir. 2010) (citations omitted); *see also Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997). Under New York law, the elements of malicious prosecution are "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello*, 612 F.3d at 161 (citation omitted).[3]

The first two of these elements are fairly pled. ADA Gaffney filed a statement of predicate felony conviction, SAC ¶ 1, initiating a criminal proceeding, pursuant to which Harmon was sentenced as a predicate felony offender and served nearly two and a half years in prison and approximately four years on parole. *Id.* ¶ 5. And Harmon was later resentenced, to a

---

[3] Contrary to the DA defendants' assertion, the SAC's malicious prosecution claims under § 1983 are timely. The statute of limitations period for such claims accrues "only when the underlying criminal action is conclusively terminated" in the plaintiff's favor. *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir. 1995); *see also Walters v. City Dep't of Corr.*, 517 F. App'x 41, 42–43 (2d Cir. 2013) (the limitations period for plaintiff's malicious prosecution claim "started to run, at the latest . . . the day he was acquitted of the drug charges"); *Palmer v. City of New York*, 315 F. App'x 350 (2d Cir. 2009) (plaintiff's malicious prosecution claim accrued the day the charges against him were dismissed since that is the day he "knew or should have known that he suffered an injury"). Here, the underlying criminal action on which Harmon's malicious prosecution claim is based was terminated in his favor on August 27, 2012, when Harmon was resentenced to one year in prison. *See* SAC ¶ 10; *id.* Ex. J. Harmon filed the initial Complaint in this action on March 13, 2013, well within the three-year limitations period for claims under § 1983. *See Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 328 (2d Cir. 2011); *Washington v. Cnty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004); N.Y. C.P.L.R. § 214.

lower term of imprisonment, based on the elimination of predicate felony offender status. *Id.*
¶ 10; *id.* Ex. J. *See Janetka v. Dabe*, 892 F.2d 187, 189–90 (2d Cir. 1989) ("[T]erminations less
favorable than an acquittal have been found to be favorable for purposes of a malicious
prosecution claim.") (collecting cases).

However, the SAC fails to plausibly plead the third or fourth elements of a malicious
prosecution claim. As to the third element, at the time the predicate-felony charge was brought,
the ADAs clearly had probable cause to treat Harmon as a predicate felony offender based on his
previous federal drug conspiracy conviction. Probable cause under New York law, in the context
of a malicious prosecution claim, is "the knowledge of facts, actual or apparent, strong enough to
justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in
the manner complained of." *Bernshtein v. City of New York*, 496 F. App'x 140, 142 (2d Cir.
2012) (citing *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994)). And, at the time of
Harmon's original sentencing, the law in New York clearly held that a federal drug conspiracy
conviction under 21 U.S.C. § 846 could validly serve as a predicate felony. It was therefore
reasonable for the ADAs on Harmon's case to charge him as such.

Specifically, the test for determining whether a prior conviction in another jurisdiction
qualifies as a predicate felony for sentencing purposes under New York law was announced in
*People v. Gonzalez*, 61 N.Y.2d 586, 589 (1984). The Court of Appeals there stated:

> For purposes of sentencing, a prior out-of-State conviction is a predicate felony
> conviction in New York when the foreign conviction carries with it a sentence of
> imprisonment in excess of one year and a sentence in excess of one year is also
> authorized for the offense in this State. . . . [T]he statute [also] requires that the
> conviction be for a crime *whose elements are equivalent to those of a New York
> felony*. To determine whether a foreign crime is equivalent to a New York felony
> the court must examine the elements of the foreign statute and compare them to
> an analogous Penal Law felony.

*Id.* (emphasis added) (citations omitted).[4]  The federal drug conspiracy statute does not require proving the commission of an overt act.  *See* 21 U.S.C. § 846.  Had commission of an overt act been treated at the time as an element of the New York crime of felony conspiracy, a conviction for violating that statute could not have served as a predicate felony conviction.  However, between 1991 and 2012, New York courts had uniformly held that the overt act requirement in the State's felony conspiracy statute was *not* an element of that statute, but was merely an "evidentiary requirement."  *See, e.g., People v. Rossney*, 577 N.Y.S.2d 683 (3d Dep't 1991); *United States v. Stone*, 531 F. Supp. 2d 486, 493 (E.D.N.Y. 2008) (canvassing New York law and stating that "[T]his Court's review of New York law makes clear that the overt act requirement is an evidentiary provision and not a substantive element of criminal conspiracy.").

For instance, in *Rossney,* the Third Department held that proof of an overt act was not required to establish a *prima facie* case of conspiracy.  The court stated:

> The elements of the substantive crime [of conspiracy] are the requisite mental state for the commission of the underlying crime and an agreement to commit that crime. . . . The legislative mandate that there must be proof of an overt act before a conviction may be had (*see,* Penal Law § 105.20) is *an evidentiary requirement* unrelated to the elements of the substantive crime.

*Id.* at 685 (emphasis added).  *Rossney* was still good law in 2001, when Harmon was sentenced. It was therefore reasonable for the ADAs in Harmon's case to treat the federal drug conspiracy

---

[4] New York's predicate felony offender statute states, in relevant part:

> For the purpose of determining whether a prior conviction is a predicate felony conviction the following criteria shall apply:
>
>> (i) The conviction must have been in this state of a felony, or in any other jurisdiction of an offense for which a sentence to a term of imprisonment in excess of one year or a sentence of death was authorized and is authorized in this state.

N.Y. Penal Law § 70.06(1)(b).

statute as analogous to the state felony conspiracy statute—because, under *Rossney*, neither had

an overt act as an element—and to charge Harmon as a predicate felony offender.

Confirming the reasonableness of the prosecutors' charging decision, shortly after

Harmon was sentenced, both the Third and First Departments each held, relying on *Rossney*, that

because the New York conspiracy statute's overt act requirement was not an element of the

crime, a defendant who had previously been convicted of an offense under 21 U.S.C. § 846 could

be sentenced as a predicate felony offender under New York law.  First, in *People v. Miller*, 728

N.Y.S.2d 526 (3d Dep't 2001), the Appellate Division, Third Department, upheld a defendant's

enhanced sentencing, in January 1998, on the basis of a federal drug conspiracy conviction.  It

stated:

> [T]here is no merit to defendant's claim that a discrepancy between State and
> Federal law regarding the need for an overt act to support a conviction of
> conspiracy precludes the use of defendant's Federal conspiracy conviction as a
> predicate felony in New York. In determining whether a foreign crime is
> equivalent to a New York felony for the purposes of enhanced sentencing, the
> inquiry focuses upon a comparison of the elements of the foreign statute with the
> elements of the analogous Penal Law felony.  Inasmuch as the Penal Law
> § 105.20 requirement of an overt act in furtherance of the conspiracy "is an
> evidentiary requirement unrelated to the elements of the substantive crime", the
> alleged discrepancy upon which defendant relies is irrelevant to the predicate
> felony issue.

*Id.* at 528 (quoting *Rossney,* 577 N.Y.S.2d at 685) (emphasis added).  Thus, less than five

months after Harmon was sentenced, the Third Department affirmed the conviction of a

defendant who was identically situated to Harmon.  And in so doing, the court expressly rejected

the claim that an overt act was an element of the offense under New York's felony conspiracy

statute that precluded a conviction under 21 U.S.C. § 846 from being treated as a predicate

felony.

The following year, the Appellate Division, First Department, reached the same result, in

*People v. Hiladrio*, 738 N.Y.S.2d 19 (1st Dep't 2002).  It stated:

> Defendant's contention that he was improperly sentenced as a second felony offender is unpreserved and we decline to reach it in the interest of justice.  Were we to reach the issue, we would find the sentence proper as it was based on a federal conviction of conspiracy to sell cocaine, and *the New York requirement of an overt act, which is not found in federal conspiracy law, is an evidentiary requirement concerning the manner in which conspiracy must be established, rather than being an element of the crime.*

*Id.* at 20 (citing *People v. Miller*, 728 N.Y.S.2d at 528) (emphasis added).

The case law, both before and immediately after Harmon's sentencing in 2001, thus reveals a uniform understanding of New York law by the courts charged with its interpretation. The ADAs had every reason, and certainly had probable cause at that time, to seek an enhanced sentence against Harmon as a predicate felony offender.

To sustain Harmon's claim here of malicious prosecution would, therefore, be an exercise in 20/20 hindsight.  At the time the decision was made to prosecute Harmon as a predicate felony offender, the law uniformly supported that charging decision.  Not until 2012 did the New York Court of Appeals, in *Ramos*, hold otherwise.  Indeed, in *Ramos*, the intermediate appellate court, the Appellate Division, First Department, had *affirmed* the trial court's sentencing of a defendant as a predicate felony offender on the basis of a conviction under 21 U.S.C. § 846.  *See* 914 N.Y.S.2d 897 (1st Dep't 2011).  This affirmance was 10 years after Harmon's sentencing.[5]

---

[5] In seeking to argue that established law as of 2001 supported his position, Harmon cites three cases, but none is on point.  Each instead addresses the proper state analogy to a *different* foreign statute.  *See People v. Muniz*, 74 N.Y.2d 464, 469 (1989) ("the statutory elements of the New Jersey crime of which defendant was convicted, which requires an intent to commit any 'offense,' differ materially from the elements of its closest New York analog, third degree burglary, which requires an intent to commit a 'crime'" because New Jersey's definition of "offense" differs substantially from New York's definition of "crime"); *People v. Jackson*, 499 N.Y.S.2d 749, 751 (1st Dep't 1986) (the North Carolina crime of assault with a deadly weapon would not be a felony in New York, because in North Carolina, such an assault lacked the

Charging Harmon as a predicate felon was, therefore, as a matter of law, reasonable at the time Harmon was prosecuted and sentenced.  Harmon's prosecutors cannot be held liable for failing to foresee the U-turn that the law would take more than a decade later.  Harmon's malicious prosecution claim against the DA defendants must fail.

Furthermore, the SAC pleads no other facts—beyond the fact of a later change in legal doctrine—supporting its claim that the prosecutors in his case acted with malice.  The SAC therefore fails to plead the fourth element of a malicious prosecution claim.  Even reading the SAC liberally, it is devoid of factual allegations that could give rise to a plausible inference that the prosecutors who charged Harmon as a predicate felony offender had a "wrong or improper motive" or anything "other than a desire to see the ends of justice served."  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 503 (1978)).

The SAC's malicious prosecution claims against the City also fail.  These claims allege that the City failed to properly:  (1) hire, train, and supervise ADAs; (1) adopt policies, procedures, or standards; and (3) investigate prior claims of similar unlawful acts committed by ADAs.  These claims are derivative of Harmon's malicious prosecution claim against the DA defendants, in that they claim that his malicious prosecution stemmed from these system delinquencies.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)

---

element of intentional infliction of physical injury or infliction of serious physical injury); *People v. Love*, 489 N.Y.S.2d 513, 514–15 (1st Dep't 1985) (because "the critical element of specified minimum monetary value of the property stolen is not an element of the Federal crime, that crime cannot be construed as a felony in [New York] State").  The point for which these cases stand is undisputed:  New York law requires that the elements of the foreign felony match the elements of the analogous state felony.  But the precise issue that is decisive here is what New York law was, as of 2001, on the question of whether the overt act requirement in the state's conspiracy statute was a statutory element.  The law on that point, between 1991 and 2012, when *Ramos* was decided, is uniformly against Harmon.

(to prevail, plaintiff must allege, among other things, that a "municipal policy of some nature caused a constitutional tort").  They must, therefore, be dismissed for the same reasons.  *See Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) ("[P]laintiff's claim pursuant to [*Monell*] is essentially derivative of his other § 1983 claims and fails for the same reasons that those claims fail.").

### B.    The SAC's Claims Against the Legal Aid Defendants Are Untimely and Fail to State a Claim Upon Which Relief May Be Granted

The SAC also asserts the following federal claims against the Legal Aid defendants:  that they (1) provided Harmon with ineffective assistance of counsel under the Sixth Amendment (under § 1983); (2) conspired with the ADAs to violate Harmon's Fourth Amendment right to be free from unreasonable seizure (under § 1985(3)); and (3) neglected to prevent the ADAs from violating Harmon's Fourth Amendment right to be free from unreasonable seizure (under § 1986).   For two independent reasons, these claims fail.

First, as the Legal Aid defendants argue, the SAC's claims against them are time-barred. In § 1983 actions, courts apply the statute of limitations for personal injury actions under state law.  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002).  Accordingly, for a § 1983 claim arising in New York, the statute of limitations is three years.  The statute of limitations is also three years for § 1985(3) claims, and one year for § 1986 claims.  *See Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir. 2001); 12 U.S.C. § 1986 ("[N]o action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.").

Federal law determines "when a federal claim accrues notwithstanding that a state statute of limitations is to be used."  *Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992); *accord Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994).  "[A]ccrual occurs 'when the

plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Pearl*, 296 F.3d at 80 (2d Cir. 2002) (quoting *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980)).  In an action based on distinct wrongful acts, courts must analyze each claim separately to determine when each accrued.  *See Singleton*, 632 F.2d at 192.

The SAC's claims against the Legal Aid defendants all arise out of events that took place between September 2000, when ADA Gaffney filed the statement of predicate felony conviction, and January 31, 2001, when Harmon was sentenced as a predicate felony offender.  By his own account, Harmon questioned his Legal Aid attorneys' decision not to contest his predicate felony status at the time of his sentencing.  SAC ¶ 4.  If Harmon believed that his attorneys' representation was ineffective or that his attorneys conspired with the ADAs to maliciously prosecute him, he was on notice that he needed to bring his claim within the time mandated by the statute of limitations.  Accordingly, Harmon's claims against the Legal Aid defendants accrued on or by January 31, 2001.  Because Harmon did not file suit until more than 12 years later, these claims—under § 1983, § 1985(3), or § 1986—are all time-barred.

Second, even if the claims against the Legal Aid defendants were timely, they would still fail to state a claim on the merits.  This in turn is true for two reasons.  First, § 1983 actions require that the "conduct complained of [be] committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).  A private actor acts under color of state law when his or her actions are "fairly attributable to the state." *Filarsky v. Delia*, 132 S. Ct. 1657, 1661 (2012).  But it is well established that defense attorneys, even if they are court-appointed, do not act under color of state law when performing traditional functions of counsel. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a

criminal proceeding."); *Brown v. Legal Aid Soc'y*, 367 F. App'x 215, 216 (2d Cir. 2010); *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997). Harmon's claim that his Legal Aid attorneys conspired with the ADAs to cause Harmon to be sentenced as a predicate felon is conclusory. Harmon's threadbare claim on this point is insufficient to transform the Legal Aid defendants into state actors for purposes of § 1983. *See Brown*, 367 F. App'x at 216 (similar conspiracy allegation held to be "insufficient even at the pleading stage to establish that the public defenders were acting under color of state law"). Because the Legal Aid defendants were not state actors, they are not subject to suit under § 1983.

Second, the SAC's claim of ineffective assistance under § 1983 fails for the same reasons that the malicious prosecution claim fails. Because at the time Harmon was sentenced, settled New York law permitted him to be charged as a predicate felon, it would have been "of no avail" for his attorneys to challenge the prosecution's decision to charge him as such. Their decision not to do so was therefore reasonable. Accordingly, Harmon has failed to plead a plausible violation of his Sixth Amendment rights.

The SAC's claims against the Legal Aid defendants under § 1985(3) also fail to state a claim. The four elements of a § 1985(3) claim are "(1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Mian v. Donaldson, Lufkin & Jenrette*

*Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 829 (1983)).

Here, not only has Harmon failed to plead any deprivation of his rights, he has also failed to allege facts that "would permit the Court to conclude or infer that the named defendants were conspiring or that [Harmon was] targeted on account of [his] race." *Mione v. McGrath*, 435 F. Supp. 2d 266, 272 (S.D.N.Y. 2006) (citation omitted). Harmon's claims under § 1985(3) that the Legal Aid defendants conspired to deprive him of his constitutional rights must therefore be dismissed.

Finally, the SAC's claim under § 1986 that the Legal Aid defendants' neglect caused the malicious prosecution that deprived Harmon of his Fourth Amendment rights must be dismissed. A § 1986 claim "must be predicated upon a valid § 1985 claim." *Mian*, 7 F.3d at 1088 (citing *Katz v. Morgenthau*, 709 F. Supp. 1219, 1236 (S.D.N.Y.), *aff'd in part and rev'd in part on other grounds*, 892 F.2d 20 (2d Cir.1989)); *see also id.* (Section 1986 "provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in section 1985 are about to be committed and having power to prevent or aid, neglects to do so"). Because Harmon has failed to state a claim under § 1985(3), he has also failed to state one under § 1986. *See Mione*, 435 F. Supp. 2d at 272.[6]

### C.    The Court Declines to Exercise Supplemental Jurisdiction Over Harmon's Claims under New York Law

Having dismissed all of Harmon's federal claims, the Court must next determine whether to exercise supplemental jurisdiction over the remaining state law claims. Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action

---

[6] To the extent that the SAC may be read to assert § 1985(3) and § 1986 claims against the DA defendants or the City, those claims would also be dismissed for these same reasons.

within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).  However, such jurisdiction is discretionary, *see Klein & Co. Futures, Inc. v. Bd. of Trade of New York*, 464 F.3d 255, 263 (2d Cir. 2006), and a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3).  A district court should, in deciding whether to exercise its supplemental jurisdiction, balance the traditional "values of judicial economy, convenience, fairness, and comity."  *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  Both the Second Circuit and the Supreme Court have held that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'"  *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).  Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "will point toward declining jurisdiction over the remaining state-law claims."  *Id.* (citing *Carnegie-Mellon*, 484 U.S. at 350 n.7).

Here, no circumstances counsel in favor of exercising supplemental jurisdiction over Harmon's claims arising under New York law.  The Court has done little more than resolve motions to dismiss, which did not address the state law claims.  The Court has not yet invested the resources necessary to familiarize with these claims, let alone to resolve them.  Nor do convenience, fairness, or comity counsel in favor of retaining jurisdiction.  The Court accordingly declines to exercise supplemental jurisdiction over these claims.  The SAC's state law claims against the defendants are dismissed without prejudice.  Harmon is at liberty to re-file those claims in state court.

**CONCLUSION**

For the foregoing reasons, defendants' motions to dismiss the SAC are granted.  The

Clerk of Court is respectfully directed to terminate all pending motions, and to close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 17, 2014
       New York, New York